J-S30044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LERONE BRUNSON | |
| Appellant | No. 1911 EDA 2014 |

Appeal from the Judgment of Sentence March 18, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1007951-2005

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED SEPTEMBER 11, 2015**

Appellant Lerone Brunson appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for robbery, theft by unlawful taking, receiving stolen property, possessing an instrument of crime ("PIC"), and simple assault.[1] After careful review, we affirm Appellant's convictions, but vacate his judgment of sentence and remand for resentencing.

The trial court accurately sets forth the relevant facts of this appeal as follows:

> On September 2, 2005, at 10:45 pm, Thomas Nealon was inside a Chinese food store on the 2000 block of Hunting Park Avenue in Philadelphia.  After he placed his order, Nealon put $4 on the counter to pay for his food order.  At

---

[1] 18 Pa.C.S. §§ 3701, 3921, 3925, 907, and 2701, respectively.

that same time, [Appellant] entered the store, "grabbed [Nealon's] money off the counter, [and] dipped into [his] right pocket and [his] left pocket and grabbed the rest of [his] money." Nealon felt what he believed to be a gun jammed into his stomach by [Appellant]. During the robbery, Nealon focused on [Appellant's] gun, black shirt, and black pants. He tried to look at [Appellant's] face but was too scared to do so; Nealon did observe that [Appellant] was a black male. Nealon described the gun as being about the "size of his hand."

After stealing Nealon's money, [Appellant] exited the store and turned left down the street. After [Appellant] exited the store, the employee behind the counter called the police. Less than 5 minutes later, police officers arrived at the Chinese food store. According to Nealon, "the police got [there] fast." The officers drove Nealon to the end of the same block where the store was and asked Nealon if he recognized a person they had stopped as the person who robbed him. Nealon responded that he recognized his clothing was the same as the person who robbed him; he specifically responded, "I believe so." Nealon identified [Appellant] at trial as the person who robbed him. During the preliminary hearing, Nealon testified that he was "not sure" if [Appellant] was the person who robbed him and that he "can't tell [the preliminary hearing judge] positively" whether [Appellant] robbed him. Police returned to Nealon $74, which was recovered from [Appellant] and was the same amount that Nealon testified was stolen from him.

* * *

Philadelphia Police Officer Paul Siwek received a radio call for a robbery in progress on the 2100 block of Hunting Park Avenue on September 3, 2005, at 10:50 pm. Officer Siwek was "right down the street" from the Chinese food store when he received the call. Officer Siwek testified he was "at the perfect location at the perfect time" to respond to the call. As he approached the store, Officer Siwek observed [Appellant], who was wearing a black shirt and black pants, and was approximately one half of a block from the Chinese food store. [Appellant] was walking on the same side of the street as the store, and, if he had

- 2 -

exited the store, [Appellant] would have turned left from the store given where he was stopped. No one else on the street matched the description provided by Nealon. Officer Siwek observed what he believed was a black gun sticking out of [Appellant's] right pocket. [Appellant] actually possessed an air gun that looked like a Glock or "real gun." Officer Siwek also recovered $74 from [Appellant], which was comprised of three $20 bills, one $10 bill, and four $1 bills.

\* \* \*

At trial, [Appellant] admitted that he was at the Chinese food store that night but denied that he robbed Nealon. [Appellant] testified that two teenagers entered the store, one of them pulled out a gun, and they robbed Nealon. [Appellant] knocked the gun out of the teenager's hand and picked it up off of the floor. Both teenagers ran out of the store.[2] [Appellant] decided to walk to the police station to "turn the gun in and tell them the situation, what happened."

Trial Court Opinion, filed November 18, 2014, at 1-3 (citations to the record omitted).

On March 18, 2014, the court sentenced Appellant to five to ten (5-10) years' incarceration for robbery followed by five (5) years' probation for PIC.[3] The record does not reflect that Appellant filed a post-sentence

_____

[2] Appellant also testified that one of the teenagers was pointing a gun at Nealon and Appellant, and that Nealon fell down to the floor during the robbery. N.T., 10/31/12, at 71-72. Appellant testified that he then called the police two times from the Chinese Food store phone to report the robbery. *Id.* at 75.

[3] Appellant's convictions for theft and receiving stolen property merged for sentencing purposes. The court imposed a determination of guilt with no

*(Footnote Continued Next Page)*

motion. Nevertheless, on June 27, 2014, the court filed an order denying Appellant's post-sentence motion, and Appellant filed a notice of appeal that same day. On July 15, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b) within twenty-one (21) days. Appellant filed a Pa.R.A.P. 1925(b) statement on March 6, 2015, almost seven months after the twenty-one days had expired and after the court had already issued its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

> DID THE COURT COMMIT ERROR BY CONVICTING APPELLANT OF ROBBERY WHERE THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT APPELLANT [THREATENED] SERIOUS BODILY INJURY WHILE COMMITTING A THEFT?
>
> DID THE COURT COMMIT ERROR BY CONVICTING APPELLANT OF THEFT BY UNLAWFUL TAKING WHERE THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT APPELLANT TOOK THE PROPERTY OF ANOTHER WITH THE INTENT TO DEPRIVE HIM THEREOF?
>
> DID THE COURT COMMIT ERROR BY CONVICTING APPELLANT OF POSSESSING AN INSTRUMENT OF CRIME WHERE THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO ESTABLISH THAT APPELLANT POSSESSED AN INSTRUMENT OF CRIME WITH INTENT TO EMPLOY IT CRIMINALLY?

Appellant's Brief at 6.

_(Footnote Continued)_ ————————

further penalty on Appellant's simple assault conviction. Appellant received credit for time served.

Before we address the merits of Appellant's claims, we must address the timeliness of this appeal. Although Appellant claims to have filed a post-sentence motion on March 18, 2014,[4] the same day as his judgment of sentence, and the court denied a post-sentence motion on June 27, 2014,[5] the record does not reflect that Appellant ever filed a post-sentence motion.[6]

---

[4] Appellant's Brief at 7.

[5] The order states:

> AND NOW, this 27th day of June, 2014, after consideration of the POST SENTENCE MOTION by the Attorney for the Defendant it is ORDERED that the POST SENTENCE MOTION IS DENIED.

Trial Court Order denying post-sentence motion, filed June 27, 2014.

[6] The docket does not show an entry of a post-sentence motion. We contacted the trial court to request a copy of any post-sentence motion, but the court was unable to locate one. The appeals unit district attorney suggested Appellant might have filed an oral post-sentence motion, however, he did not. The sentencing transcript reveals that Appellant expressed his intent to file a motion in the future, and the court specifically directed him to file a written post-sentence motion:

> [DEFENSE COUNSEL]: [Appellant], good afternoon. I just need to inform you that you've been sentenced by the Honorable Judge Anders in connection with this matter, I need to inform you that you have ten days to file in writing a motion for reconsideration of this sentence and 30 days to file an appeal to the Superior Court of the state of Pennsylvania, which includes, it must be in writing within 30 days from the disposition of this matter, which also must be in writing. Do you understand?
>
> [APPELLANT]: (Witness nodding head).

*(Footnote Continued Next Page)*

- 5 -

Regarding the effect of a post-sentence motion on the timeliness of an appeal, we observe:

> A defendant has ten days after the imposition of sentence to file a post-sentence motion. Pa.R.Crim.P. 720(A)(1). An untimely post-sentence motion does not preserve issues for appeal. **Commonwealth v. Hockenberry,**. 689 A.2d 283, 288 ([Pa.Super.]1997).
>
> If no post-sentence motion is filed within the ten-day time period, the defendant has thirty days from sentencing to file a direct appeal. Pa.R.Crim.P. 720(A)(3). This Court does not have jurisdiction to hear an untimely appeal. **Commonwealth v. Green**, 862 A.2d 613, 615 (Pa.Super.2004).

**Commonwealth v. Wrecks**, 931 A.2d 717, 719-20 (Pa.Super.2007).

> Under **Commonwealth v. Dreves**, 839 A.2d 1122, 1128 (Pa.Super.2003) (*en banc* ), a post-sentence motion *nunc*

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> THE COURT: If you cannot do so – you may retain the services of an attorney. Just make sure whatever you do is in writing, okay. Do you wish at this point to exercise any of your rights either to file a post-sentence motion challenging the weight or sufficiency or appeal this verdict?
>
> [APPELLANT]: I would like to appeal it.
>
> [THE COURT]: All right. So [Defense Counsel], I think it would be appropriate to file a post-sentence motion in the same way that you've done. Just say it is the verdict, the sufficiency and the weight. The sentence itself –
>
> [DEFENSE COUNSEL]: I understand, Your Honor. However, I just was retained for the trial and [my] agreement states that. I will not be available.

N.T., March 18, 2014, pp. 16-17. Appellant did not thereafter file a written motion.

*pro tunc* may toll the appeal period, but only if two conditions are met. First, within 30 days of imposition of sentence, a defendant must request the trial court to consider a post-sentence motion *nunc pro tunc.* "The request for *nunc pro tunc* relief is separate and distinct from the merits of the underlying post-sentence motion." *Id.* at 1128–29. Second, the trial court must **expressly permit** the filing of a post-sentence motion *nunc pro tunc,* also within 30 days of imposition of sentence. *Id.* at 1128 & n. 6. "If the trial court does not expressly grant *nunc pro tunc* relief, the time for filing an appeal is neither tolled nor extended." *Id.* at 1128. Moreover, "[t]he trial court's resolution of the merits of the late post-sentence motion is no substitute for an order expressly granting *nunc pro tunc* relief." *Id.* at 1129.

*Commonwealth v. Capaldi*, 112 A.3d 1242, 1244 (Pa.Super.2015).

Instantly, the record does not reflect that Appellant filed either a written or an oral post-sentence motion. Further, there is no indication that he requested, or that the court granted him, *nunc pro tunc* relief. Moreover, the trial court's ruling on the merits of the late or missing post-sentence motion is not a substitute for an order explicitly granting *nunc pro tunc* relief. **See Capaldi, supra.** Because Appellant did not file a post-sentence motion, he did not toll the appeal period, which expired on April 17, 2014. Thus, his notice of appeal, filed June 27, 2014, is facially untimely.

Nevertheless, we decline to quash this appeal because we find there has been a breakdown in the court's operation. **See Commonwealth v. Leatherby**, 116 A.3d 73, 79 (Pa.Super.2015) ("[An appellant] should not be precluded from appellate review based on what was, in effect, an administrative breakdown on the part of the trial court.").

Although neither the record nor the docket reflects the filing of a post-sentence motion, the transcript from June 27, 2014, the day the court denied the post-sentence motion, suggests a breakdown in the court's operation. The transcript provides, in its entirety:

> THE COURT: [Replacement Counsel], you're appointed to see if there's any after discovered evidence that may be the basis for some ineffectiveness by trial counsel.[7] You have conducted your investigation and you have what to offer to the [c]ourt?
>
> [REPLACEMENT COUNSEL]: There's nothing in addition to offer to the [c]ourt, that was prior to. What I can say is that, if the way the [c]ourt has worded it, it may not allow [Appellant] to do a direct file appeal. I think we have to word – I did a motion for a rest of judgment. This [c]ourt continued it for possible new discovered evidence and that it is denied because we continued it for then another purpose, just for me to find after discovered evidence, he would have had a direct file appeal rights. I did review my appellate procedure, that there is after discovered evidence within the motion for a rest of judgment, this [c]ourt could have reviewed and still can review anything on a motion for a rest of judgment.
>
> THE COURT: Right. And we're also within the 120-date period to decide the post-sentence motions, so your post-sentence motion, how it is styled, would be denied –
>
> [REPLACEMENT COUNSEL]: Thank you.
>
> THE COURT: -- without prejudice to you filing any appeal and it's my view, an appeal would be timely.

---

[7] The trial court appointed replacement counsel on March 21, 2014. The docket reflects that the court granted replacement counsel's motions for continuance on March 21, 2014 and on May 30, 2014.

[REPLACEMENT COUNSEL]:  So I will file a timely appeal and attach a letter to this [c]ourt, requesting to be withdrawn and have new counsel appointed.

THE COURT:  That's fine.

[REPLACEMENT COUNSEL]:  Thank you, Your Honor.

N.T., 6/27/14, at 4-5.

Although Appellant failed to file a post-sentence motion or a timely appeal,[8] and the trial court does not have the power to fix jurisdictional problems created by the ineffective assistance of counsel,[9] the court misadvised Appellant of his appellate rights, creating a breakdown in the court process.[10]  *See Commonwealth v. Patterson*, 940 A.2d 493, 499 (2007) ("the trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of Appellant's notice of appeal.");

---

[8] It is the appellant's duty to ensure that the record is complete for purposes of appellate review, however "where the failure to transmit the record was caused by an extraordinary breakdown in the judicial process, an appellant should not be denied merits review in the Superior Court." *Commonwealth v. Almodorar*, 20 A.3d 466, 467 (Pa.2011) (internal quotation marks and citations omitted).

[9] Generally, counsel's failure to file a timely post-sentence motion or direct appeal would implicate a claim of ineffective assistance of counsel, which should be raised in a petition for relief pursuant to the Post Conviction Relief Act ("PCRA") 42 Pa.C.S. 9541-9546.  *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa.2013) ("claims of ineffective assistance of counsel are to be deferred to PCRA review").

[10] We note that the trial court properly advised Appellant of his post-sentence rights at sentencing.  The court, however, misadvised Appellant of his post-sentence rights on June 27, 2014.

*Commonwealth v. Parlante*, 823 A.2d 927, 929 (Pa.Super.2003) ("the trial court's misstatement of appeal period…operated as a breakdown in the court's operation"). Further, the transcript suggests the presence of a possible motion that was not docketed due to counsel or the court's error. *See Commonwealth v. Leatherby*, 116 A.3d 73, 78-79 (Pa.Super.2015) (declining to quash untimely appeal where appellant was not at fault). Thus, we decline to quash this appeal for Appellant's failure to file a post-sentence motion, or a timely post-sentence motion, or a timely appeal.

We must next address Appellant's failure to timely comply with Pa.R.A.P. 1925(b).

In *Commonwealth v. Lord*, our Supreme Court held that "[a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." 719 A.2d 306, 309 (1998). In *Commonwealth v. Castillo*, the Supreme Court re-affirmed the bright line rule set forth in *Lord* that mandates strict compliance with Rule 1925(b). 888 A.2d 775, 780 (Pa.2005). In *Castillo*, the Court specifically voiced its disproval of "prior decisions of the intermediate courts to the extent that they…created exceptions to *Lord* and have addressed issues that should have been deemed waived." *Id.*

Here, on July 15, 2014, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one (21) days, and Appellant filed his

statement on March 6, 2015, after the twenty-one days had expired. The record reflects that appellate counsel withdrew and new appellate counsel was appointed on July 23, 2014. The record does not reflect, however, that new appellate counsel requested, or that the court granted, an extension of time to file the Pa.R.A.P. 1925(b) statement.

When the trial court has addressed the issues presented in an untimely Rule 1925(b) statement, however, we need not remand and may address the merits of the issues presented. **Commonwealth v. Thompson**, 39 A.3d 335, 340-41 (Pa.Super.2012). We observe:

> While it is technically accurate that a complete failure to file, or failure to timely file, a Rule 1925(b) statement results in waiver of the issues, [**Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa.Super.2009)], under the current version of the rule, a finding of waiver does not necessarily end the trial court's analysis or require it to ignore the issues raised. Because the untimely or complete failure to file a Rule 1925(b) statement waives issues on appeal, counsel is *per se* ineffective. **Id.** Under Rule 1925(c)(3), the remedy for *per se* ineffectiveness in criminal cases is no longer collateral relief, but to remand to the trial court, either for the filing of a Rule 1925(b) statement *nunc pro tunc* or the filing of a Rule 1925(a) opinion addressing the issues raised in an untimely 1925(b) statement. **Id.** Thus, to avoid unnecessary delay, when a trial court orders the appellant in a criminal case to file a Rule 1925(b) statement and the appellant files it untimely, the trial court's Rule 1925(a) opinion should note the *per se* ineffectiveness of counsel, appoint new counsel if it deems it necessary, **see West, supra** at 658, and address the issues raised on appeal. **See Burton, supra** at 434 (holding remand is not necessary where trial court addressed issues in untimely Rule 1925(b) statement). Similarly, where, as here, counsel fails to file a Rule 1925(b) statement before the trial court files a Rule 1925(a) opinion, the opinion should note the

- 11 -

> ineffectiveness of counsel, permit counsel to file a statement *nunc pro tunc* and address the issues raised in a subsequent Rule 1925(a) opinion. The trial court may appoint new counsel if original counsel fails to comply with the order because a failure to comply with the order would prohibit appellate review. **See id.** at 432 ("Filing of Rule 1925 concise statement when ordered is a 'prerequisite to appellate merits review' and is 'elemental to an effective perfection of the appeal.' ").

**Thompson**, 39 A.3d at 341.

In this case, the trial court filed its Pa.R.A.P. 1925(a) opinion on November 18, 2014, before Appellant filed his Pa.R.A.P. 1925(b) statement. In his Pa.R.A.P. 1925(b) statement and in his brief, Appellant challenges the sufficiency of the evidence for his convictions for robbery, unlawful taking and PIC. In its Pa.R.A.P. 1925(a) statement, the trial court addresses Appellant's challenge to the sufficiency of the evidence for all of his convictions. Thus, there is no need for the trial court to file a supplemental Pa.R.A.P. 1925(a) statement. We note that counsel is *per se* ineffective, but continue to address the merits of Appellant's claims.

In his combined issues on appeal, Appellant challenges the sufficiency of the evidence for his convictions. Appellant argues that the evidence only shows that Appellant was present at the crime scene. He claims that the only witness to the crime could not identify Appellant as the perpetrator because he could only give a vague and contradictory description of his clothing. He concludes that there was insufficient evidence to convict

Appellant of robbery, theft by unlawful taking, or possessing an instrument of crime. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Appellant challenges the sufficiency of the evidence for the following convictions, which are defined by statute.

### § 3701. Robbery

**(a) Offense defined.**--

- 13 -

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa.C.S. § 3701.

## § 3921. Theft by unlawful taking or disposition

**(a) Movable property.**--A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

**(b) Immovable property.**--A person is guilty of theft if he unlawfully transfers, or exercises unlawful control over, immovable property of another or any interest therein with intent to benefit himself or another not entitled thereto.

18 Pa.C.S. § 3921.

## § 907. Possessing instruments of crime

**(a) Criminal instruments generally.--**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

**(b) Possession of weapon.--**A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

**(c) Unlawful body armor.--**A person commits a felony of the third degree if in the course of the commission of a felony or in the attempt to commit a felony he uses or wears body armor or has in his control, custody or possession any body armor.

**(d) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Body armor."** Any protective covering for the body, or parts thereof, made of any polyaramid fiber or any resin-treated glass fiber cloth or any material or combination of materials made or designed to prevent, resist, deflect or deter the penetration thereof by ammunition, knife, cutting or piercing instrument or any other weapon.

**"Instrument of crime."** Any of the following:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

**"Weapon."** Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

18 Pa.C.S. § 907.

In this case, Nealon, Officer Siwek and Appellant testified at a bench trial on October 31, 2013. Nealon testified that a black male wearing a black shirt and pants, later identified as Appellant, took money from the counter in front of him at a Chinese store, pressed a gun against him, and took money out of his pocket. Officer Siwek testified that he responded to the scene and found Appellant located a half a block from the Chinese store with a gun sticking out of his back pocket. Appellant testified that he was in the store, but that two Hispanic boys took the money from the counter and from Nealon's pocket and that Appellant just picked up the gun for safety. The court, as the trier of fact, was free to believe all, part, or none of the evidence. **See Hansley, supra.** Viewing the testimony in the light most favorable to the Commonwealth, there was sufficient evidence to enable the court to find every element of the crimes beyond a reasonable doubt. Appellant's three issues on appeal merit no relief.

We now consider the legality of Appellant's mandatory minimum sentence under 42 Pa.C.S. § 9712. Although Appellant did not raise any issue related to the legality of his sentence, we note that questions regarding the legality of a sentence "are not waivable and may be raised *sua sponte* by this Court." **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa.Super.2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa.2014). Further, we note that issues regarding the Supreme Court of the United States' decision in **Alleyne v. United States**, __ U.S. __, 133 S.Ct 2151, 186 L.Ed

2d 341 (2013), directly implicate the legality of the sentence. ***Commonwealth v. Wolfe***, 106 A.3d 800, 801 (Pa.Super.2014)*, appeal granted*, ___ A3d ___ 2015 WL 4755651.

Our standard of review of questions involving the legality of a sentence is as follows:

> A challenge to the legality of a sentence…may be entertained as long as the reviewing court has jurisdiction. It is also well-established that if no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.  An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law.  Our standard of review over such questions is *de novo* and our scope of review is plenary.

***Wolfe***, 106 A.3d at 801-02 (citations omitted).

In this case, Appellant was sentenced under the following statute:

### § 9712. Sentences for offenses committed with firearms

**(a) Mandatory sentence.--**Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

**(b) Proof at sentencing.--**Provisions of this section shall not be an element of the crime and notice thereof to the

> defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S. § 9712.

In **Alleyne**, the Supreme Court held that the Due Process Clause of the Federal Constitution requires each factor that increases a mandatory minimum sentence be submitted to a jury and found beyond a reasonable doubt. **Alleyne**, 133 S.Ct at 2163. Based upon **Alleyne**, this Court stated in dicta in **Watley** that 18 Pa.C.S. § 7508[11] and 42 Pa.C.S. § 9712.1[12] are unconstitutional insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard for factors other than a prior conviction. **Watley**, 81 A.3d at 117 n. 4.

More recently, in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super.2014) (*en banc*), following our dicta in **Watley**, we held that the preponderance of the evidence standard in section 9712.1(c) is

---

[11] § 7508. Drug trafficking sentencing and penalties.

[12] § 9712.1. Sentences for certain drug offenses committed with firearms.

unconstitutional under *Alleyne*. We then addressed whether it was possible to continue enforcing the remaining subsections of section 9712.1 after severing subsection (c). We held that section 9712.1, as a whole, was no longer workable, because subsection (c) was "essentially and inseparably connected" with the mandatory minimum sentencing provision in subsection (a). *Newman, supra* at 101. Further, in *Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super.2014), this Court declared section 9712 unconstitutional and found that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following *Alleyne*. We cannot do so." *Valentine*, 101 A.3d at 811. [13]

Pursuant to *Valentine*, because the trial court sentenced Appellant under the unconstitutional provision of section 9712, we must vacate Appellant's judgment of sentence and remand for resentencing without application of the mandatory minimum.

Convictions affirmed. Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

---

[13] In *Commonwealth v. Hopkins*, our Supreme Court affirmed our holding that the preponderance of the evidence standard in 18 Pa.C.S. § 6317(a) is unconstitutional and that the "violative provisions [are] not severable." 117 A.3d 247 (Pa.2015).

President Judge Emeritus Ford Elliott joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2015